IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                          Cr. No.  24-20073-TLP

JOSHUA ROGERS,

    Defendant.

**DEFENDANT'S POSITION WITH REGARD
TO THE DRAFT PRESENTENCE INVESTIGATION REPORT**

Comes now the defendant through appointed counsel pursuant to Rule 32 of the Federal Rules of Criminal Procedure and Local Criminal Rule 32.1 and submits the following with respect to sentencing in this case.

**I. Defense Counsel Certification:**

Counsel received Mr. Rogers' draft presentencing report (PSR). A copy of the report has been provided to Mr. Rogers for his review. The contents of the PSR have been discussed with Mr. Rogers.

**II. The Sentencing Hearing**

The sentence hearing will require approximately one (1) hour to complete.

**III. Factual Objections.**

Mr. Rogers has no factual objections to the portions of the PSR that pertain to him

that impact on the calculations of the guideline range. Mr. Rogers did not travel to Walmart as alleged in Paragraph 18.

Mr. Rogers had absolutely no involvement with the murder of R.H. or the planning of any crime against R.H.

**IV.  Legal Objections.**

**Mr. Rogers has two objections to the guideline calculations.**

1.  **Mr. Rogers objects to the omission of the mitigating role adjustment of U.S.S.G §3B1.2.**

Mr. Rogers submits that the 4-level downward adjustment for being a minimal participant in any criminal activity is warranted under the circumstances. Mr. Rogers' base offense level was increased to a level 30 based on a cross-reference to First Degree Murder in violation of 18 U.S.C. § 1111 and for the conduct of his co-defendant, Mr. Ferguson. Mr. Rogers had no knowledge of at the time Mr. Ferguson committed a civil rights offense, murder or kidnapping that any offense had occurred. He had absolutely no involvement in committing those offenses or planning them.

When determining the applicability of the mitigation role adjustment, the level of the adjustment, or an intermediate adjustment pursuant to U.S.S.G. §3B1.2., the Court is instructed to consider the totality of the circumstances. *See, USSG 3B1.2, app. n. 3(C).* Any adjustment determination is heavily dependent on the facts of the case. *Id.* The application note lists several non-exhaustive factors that the Court should consider. Those factors include:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

*USSG 3B1.2, app. n. 3(C).*

In the case at bar, Mr. Rogers had absolutely nothing to do with the planning of or the kidnapping and murder of R.H. He did not know what Mr. Ferguson had done until after Mr. Fergurson had committed the act. And Mr. Ferguson lied to him about the true cause of the actions Ferguson took. Therefore, he had no idea of the scope or structure of the murder or deprivation of civil rights under the color of law that Mr. Fergurson had darkened his doorstep with on that night of January 6, 2021, or early morning of January 7, 2021. Mr. Rogers had no role in planning or organizing the criminal activity.

Mr. Rogers was faced with a series of events that he was ill-prepared to deal with, and he lacked the opportunity to fully process and make the right decisions. A

person he had known for years had shown signs of and demonstrated a breakdown mentally.  This person was having suicidal ideations.  Mr. Ferguson's family was made aware of this mental health crisis by the Memphis Police Department (MPD).  Mr. Ferguson's family was contacted by MPD to assist.  Mr. Ferguson's family contacted Mr. Rogers because they believe that Mr. Ferguson would respond to Mr. Rogers plea that he does not harm himself.  After this incident, the MPD allowed Mr. Ferguson to continue in their employ as a patrolman with a firearm without requiring any treatment or counseling for his mental health issues before he returned to patrolling the City of Memphis.  Little did Mr. Rogers know that in a very short time thereafter, Mr. Ferguson would appear at his home unexpectedly and casually take him to an area to show and reveal to him the body of a man he had murdered.  At that point, Mr. Rogers realized that he was dealing with someone capable of horrific actions.

    Mr. Ferguson initially told Mr. Rogers that the man was the person responsible for raping Mr. Ferguson's sister.  That man was R.H. and that story of rape was a lie.  Considering everything that was revealed to him and the mental state that Mr. Ferguson was experiencing, Mr. Rogers gently suggested to Mr. Ferguson that he needed to turn himself in.  Mr. Ferguson returned Mr. Rogers to his home and left only to appear later in the following morning with a request-turned demand.  The following morning, Mr. Feguson requested that Mr. Rogers drive him to turn himself in to the authorities.  Mr. Rogers agreed but did not recognize the full gravity of the situation because at some point on that drive, Mr. Ferguson, the man struggling the mental

health issues apparently brought on by rejection, still armed with a weapon after he had murdered R.H. in cold blood demanded that Mr. Rogers help him with covering up his actions. Mr. Rogers did not feel that saying no was a real option.

Mr. Rogers had no decision-making authority and his attempts to influence Mr. Ferguson to do the right thing had failed. Mr. Rogers was truly in self-preservation mode. Mr. Rogers did as was instructed of him and he did it in a way not to cause alert to his disagreement with the actions because he did not want to lose his life at the hands of the unstable person that Mr. Ferguson is. Mr. Rogers stood to benefit in no way and benefited in no way from this criminal activity. He has completely lost; he is forever a convicted felon and his life's trajectory has changed completely. He believes his aberrant behavior resulted from a hasty decision that in his mind was done out of the necessity for self-preservation. Nonetheless, he was a minimal participant in this criminal activity, and his offense guidelines should be reduced accordingly by four (4) levels.

**2.    Mr. Rogers objects to the omission of the adjustment for certain zero-point offender reduction pursuant to U.S.S.G §4C1.1.**

U.S.S.G. §4C1.1 provides a two (2) level decrease from the offense level determined under Chapters Two and Three if a defendant meets all the criteria listed in U.S.S.G. §4C1.1(a)(1-11). Mr. Rogers meets the criteria and is eligible for the two (level) decrease.

Mr. Rogers has no criminal history points. *U.S.S.G. §4C1.1(a)(1).* He did not

receive an adjustment under §§3A1.1, 3A1.4 or 3A1.5.  *U.S.S.G. §4C1.1(a)(2) & (9)*.  Mr. Rogers did not use violence or credible threats of violence in connection with the offense.  *U.S.S.G. §4C1.1(a)(3)*.  Mr. Rogers' offense did not result in death or serious bodily injury.  *U.S.S.G. §4C1.1(a)(4)*.  The offense is not a sex offense, nor did he cause substantial financial hardship.  *U.S.S.G. §4C1.1(a)(5) & (6)*.  Mr. Rogers did not possess a firearm or other dangerous weapon in connection with the offense.  *U.S.S.G. §4C1.1(a)(7)*.  The offense of conviction is not covered by §2H.1.1.  *U.S.S.G. §4C1.1(a)(8)*.  There are no adjustments under U.S.S.G. §3B1.1.  *U.S.S.G. §4C1.1(a)(10)*.  Additionally, Mr. Rogers was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. §848.  Mr. Rogers should receive the two (2) level reduction to his offense level.

## V. Recommended Sentence:

The defense maintains that the properly calculated guideline range is (37-46) months based on an adjusted offense level of 21 and a criminal history of I.  The defense is going to recommend a non-custodial sentence as a sentence that is sufficient but not greater than necessary pursuant to the 18 U.S.C.A. §3553(a) factors as will be explained and discussed more fully at the sentence hearing.   Mr. Rogers reserves the right to amend his position as appropriate.

                                                          Respectfully submitted,

                                                         TYRONE J. PAYLOR
                                                         FEDERAL PUBLIC DEFENDER

                                                         s/Tyrone J. Paylor
                                                         Federal Defender

                                200 Jefferson Avenue, Suite 200
                                Memphis, TN 38103
                                (90) 544-3895

## CERTIFICATE OF SERVICE

      I, Tyrone J. Paylor, certify that a true copy of the foregoing Defendant's Position Regarding Sentencing Factors was forwarded via the Court's electronic filing system to the Assistant United States Attorney assigned this matter.

      THIS 9th day of December 2025.

                                            s/ Tyrone J. Paylor
                                            Federal Defender